[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13710
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00340-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALTER EUGENE STONE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 27, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

Walter Stone appeals his conviction for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).  He contends that the firearm was found during an illegal search of his home.

I.

On August 2, 2011 Baldwin County Sheriff's Deputies Clarence Herring and Jason Selph went to Stone's home to execute an arrest warrant.  The arrest warrant was issued because Stone was having contact with minors in violation of conditions imposed on his bond after he was charged with sexual abuse of a child under the age of 12.  When the deputies arrived at Stone's home, they knocked on the door and a boy who appeared to be about 8 years old opened the door.  The boy told Deputy Herring that Stone was his uncle and that he was living there.  Deputy Herring asked if Stone was in the house, and the boy indicated that he was.  A girl who appeared to be about 10 or 11 years old then appeared at the door, followed by Stone.  Deputy Herring asked Stone to step outside, and placed him into custody and put him the back of his patrol car.

Deputy Herring then called the Baldwin County District Attorney's Office to ask what he should do about the fact two children appeared to be living in Stone's home.  An assistant district attorney told him to make sure the children had a safe place to live.  Deputy Herring went back to the front door and spoke with Mrs.

2

Stone[1] to ask permission to see where the children were staying. Mrs. Stone consented and pointed to the children's bedroom. According to Deputy Herring, Mrs. Stone consented to his entering the bedroom to look around, but according to her, she told him that he could only open the door and look inside.

Deputy Herring then entered the bedroom, where he observed a gun rack hanging on the wall. The gun rack was next to the doorway and would not have been visible if Deputy Herring had not gone inside the room. On the gun rack were four firearms, including a sawed-off shotgun that was not registered in the National Firearms Registration Transfer Record. The children told the deputy that the guns belonged to Stone, but Mrs. Stone claimed that they belonged to her son. Deputy Herring obtained written consent from Mrs. Stone to search the entire house, and then went to speak with Stone, who admitted that the firearms in the bedroom belonged to him.

## II.

Stone was indicted for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Stone moved to suppress the sawed-off shotgun, contending that the search of the bedroom was unlawful because Deputy Herring exceeded the scope of Mrs. Stone's verbal consent. After conducting an evidentiary hearing and hearing testimony from Mrs. Stone, Deputy Herring, and Deputy Selph, the court

---

[1] To avoid confusion, we refer to the defendant as "Stone" and his wife as "Mrs. Stone."

3

denied the motion to suppress.  Stone then pleaded guilty to the charged offense but reserved the right to appeal the denial of the motion to suppress.  This is his appeal.

The district court's ruling on the motion to suppress presents a mixed question of law and fact.  United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009).  We review its factual findings for clear error, viewing the facts in the light most favorable to the prevailing party, which in this case is the government.  Id. We review de novo its conclusions of law.  Id.

The Fourth Amendment protects a person's right to be free from "unreasonable searches and seizures."  U.S. Const. Amend. IV.  A search of a person's home is not unreasonable and does not violate the Fourth Amendment when there is valid consent.  Stone does not dispute that Mrs. Stone had the authority to consent to the search of the home or the children's bedroom.  See United States v. Backus, 349 F.3d 1298, 1299 (11th Cir. 2003) ("A spouse who jointly owns and occupies the marital home with the defendant may consent to a search of it with the same effect as if the defendant himself had done so.").  The only issue before us is whether Deputy Herring's entry into the bedroom exceeded the scope of Mrs. Stone's verbal consent.

The district court heard conflicting testimony on that issue at the evidentiary hearing.  Mrs. Stone testified that Deputy Herring asked if he could "push the door

4

open and look" inside the bedroom, and that she consented only to that. Deputy Herring testified that Mrs. Stone never limited her permission to his standing at the door and looking inside. He also testified that when he entered the bedroom she did not object. The district court credited Deputy Herring's testimony and concluded that Mrs. Stone had consented to his entering the bedroom.

The district court's determination that Deputy Herring's testimony was more credible than Mrs. Stone's is not "contrary to the laws of nature" or "so inconsistent or improbable on its face that no reasonable factfinder could accept it." United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004); see also United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012) (stating that "we afford substantial deference to the factfinder's credibility determinations"); Owens v. Wainwright, 698 F.2d 1111, 1113 (11th Cir. 1983) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony."). Accordingly, the district court did not clearly err by finding that the deputy's entry into the bedroom was within the scope of Mrs. Stone's consent. Pineiro, 389 F.3d at 1366; see also United States v. Foster, 155 F.3d 1329, 1331 (11th Cir. 1998) ("Where the evidence has two possible interpretations, the district court's choice between them cannot be clearly erroneous.") Because the district court did not clearly err by concluding

5

that Mrs. Stone consented to the search, we affirm its denial of the motion to suppress and Stone's conviction.

**AFFIRMED.**